United States District Court
District of Massachusetts

|  |  |
|---|---|
| Serge Belozerov on behalf of himself and all others similarly situated, ) ) ) ) ) Plaintiff, ) ) v. ) ) Gannett Co., Inc., ) ) Defendant. ) ) | Civil Action No. 22-10838-NMG |

**MEMORANDUM & ORDER**

This consumer digital privacy class action arises from alleged violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("the VPPA"). The named plaintiff, Serge Belozerov ("plaintiff" or "Belozerov"), seeks on his own behalf and behalf of persons similarly situated, judicial relief from Gannett Co., Inc. ("defendant" or "Gannett"), the owner of the newspaper USA Today. Plaintiff alleges that Gannett unlawfully disclosed his personally identifiable information ("PII") to Facebook.

Plaintiff brings claims for damages as a result of the alleged violations of the VPPA. Pending before the Court is defendant's motion to dismiss.

## I. Background

### A. The Parties

Plaintiff Serge Belozerov resides in Worcester, Massachusetts. Defendant is an American media company headquartered in McLean, Virginia that owns more than 260 daily publications, including USA Today.

### B. Factual History

USA Today is one of the most circulated newspapers in the United States. It has hundreds of thousands of digital subscribers and offers two kinds of digital subscriptions: one paid and one unpaid. Both subscriptions provide access to articles and video content. In order to subscribe, users must provide their name and email address.

According to the complaint, Gannett collects and shares the personal information of visitors to its website and mobile phone application ("app") with third parties through the use of "cookies," software development kits and pixels. Specifically, Gannett had Facebook create a code for a tracking pixel. The tracking pixel is an invisible tool that would enable Gannett to track what video media its users watched on the USA Today website or app and report it to Facebook. Gannett then installed the tracking pixel on its website and app to provide targeted advertising to its users.

As alleged in the complaint, Gannett sends Facebook the digital subscriber's Facebook ID and the name and Uniform Resource Locator ("URL") of the video content viewed on the USA Today website or app as one data point.  A Facebook ID ("FID") is a unique identifier that can be used to look up an individual's Facebook user account.  Together, that information enables Facebook or any computer-savvy person to discern the identity of the digital subscriber and the specific video content he or she viewed on the USA Today website or app.

Although USA Today's privacy policy informs users that their website activity and personal information may be shared with third parties for targeted advertising, Gannett purportedly never obtained express consent from its digital subscribers to share their personal information with Facebook.

Plaintiff Belozerov has been a USA Today digital subscriber since approximately 2015 and has maintained a Facebook account since approximately 2008.  From 2015 to the present, plaintiff used his USA Today digital subscription to view videos through defendant's website and app.  Belozerov alleges that he never consented, agreed, authorized or otherwise permitted defendant to disclose his personal information to Facebook.  Moreover, he contends that he was not given notice that defendant discloses that information nor any means of opting out of such

disclosures. Nonetheless, plaintiff's personal information was disclosed without his express written consent to Facebook pursuant to the process described above.

### C.  Procedural History

On June 1, 2022, plaintiff filed a class action complaint in this Court alleging violations of the VPPA. Belozerov seeks (1) a determination that this action may be maintained as a class action, (2) an order declaring that defendant's conduct violates the VPPA, (3) payment of $2,500 from defendant to plaintiff and each class member pursuant to 18 U.S.C. § 2710(c)(2)(A), (4) punitive damages, (5) prejudgment interest on all amounts awarded, (6) an order of restitution and other forms of equitable monetary relief, (7) injunctive relief and (8) attorneys' fees.

Defendant has moved to dismiss the complaint in a timely fashion.

## II.  Motion to Dismiss

### A.  Legal Standard

To survive a motion under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). A court also may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12. Rather, the necessary inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13. The assessment is holistic:

> the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible[.]

Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013), quoting Ocasio-Hernandez, 640 F.3d at 14.

**B.   Video Privacy Protection Act, 18 U.S.C. § 2710**

The VPPA was enacted in 1988 in response to a profile on Judge Robert H. Bork's video rental history by a Washington newspaper published during his Supreme Court confirmation

- 5 -

hearings. S. Rep. No. 100-599, at 5 (1988). The profile listed 146 films that his family had rented from a video store. Id. Members of the Senate Judiciary Committee denounced the disclosure and introduced the bill to protect the right to privacy amidst the growth of advanced information technology. Id. at 5-8.

The VPPA generally prohibits the knowing disclosure of a customer's video rental or sale records without informed written consent of the customer. The statute provides a civil damages remedy against those who violate the statute, stating:

> [a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person . . .

18 U.S.C. § 2710(b)(1). The statute defines a "video tape service provider" as

> any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials[.]

Id. § 2710(a)(4). A consumer is "any renter, purchaser, or subscriber of goods or services from a video tape services provider." Id. § 2710(a)(1). The statute states that "personally identifiable information," or PII,

> includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider[.]

Id. § 2710(a)(3).

### C. Application

Defendant moves to dismiss plaintiff's complaint on three grounds: (1) that it is a news provider and does not meet the statutory definition of a "video tape services provider," (2) that plaintiff does not plausibly allege that Gannett disclosed PII and (3) that even if it did disclose PII, it did not do so knowingly. The Court will address each argument in turn.

#### 1. Video Tape Service Provider

Gannett asserts that Belozerov is not entitled to relief under the VPPA because he did not subscribe to "goods or services from a video tape services provider." 18 U.S.C. § 2710(a)(1). According to Gannett, because Belozerov did not pay to access USA Today's content, he cannot be a "subscriber of goods or services." See id.

The First Circuit has already struck down a nearly identical argument made by Gannett six years ago, "decline[ing] to interpret the [VPPA] as incorporating monetary payment as a necessary element." Yershov v. Gannett Satellite Information Network, Inc., 820 F.3d 482, 488 (1st Cir. 2016). Thus, plaintiff has sufficiently pled that he was a subscriber of USA Today.

Defendant next maintains that USA Today is a news provider and thus not primarily "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).  Plaintiff responds that Gannett is in fact a video tape services provider as defined by the VPPA because it is engaged in the business of delivering computer files containing video content, which are "similar audio visual materials" to prerecorded cassette tapes. Id.  Moreover, contrary to defendant's argument, plaintiff stresses that the VPPA is not limited to entities that are primarily engaged in the business of providing video content, nor is it limited to audio visual materials of a certain content, medium or duration.

Again, the First Circuit decision in Yershov provides guidance on this issue. 820 F.3d at 489-90.  Although the First Circuit did not explicitly analyze whether Gannett was a "video tape service provider" because Gannett did not challenge that element of the claim, it ultimately held that the plaintiff plausibly pled a case where the VPPA's prohibition on disclosure applied. Id. at 485 n.2, 489-90.

In their pleadings, both parties characterize the case at bar and Yershov as involving "the same issues."  In fact both cases involve consumers' lawsuits against USA Today for

violations of the VPPA. Therefore, this Court will follow controlling First Circuit precedent and find that plaintiff has plausibly pled that he subscribed to goods and services from a video tape services provider under the VPPA. Id. at 489-90.

### 2. Disclosure of PII

Rather than disputing whether the information that Gannett collected from plaintiff constitutes PII, defendant argues that it did not actually "disclose" any PII to Facebook. In support of its argument, defendant attempts to introduce contradictory facts stating that Facebook, not Gannett, collects such information from the consumer.

The Court notes that, as alleged in the complaint, when a user watches video media on the USA Today website, USA Today sends Facebook certain information, including the video content name, its URL and the user's Facebook ID.

A Facebook ID meets the broad definition of PII in this circuit. In Yershov, the First Circuit analyzed the language of the statute to conclude that

> PII is not limited to information that explicitly
> names a person [and] many types of information other
> than a name can easily identify a person.

Yershov, 820 F.3d at 486. A Facebook ID is a unique identifier that allows anyone to discover the user's identity. Furthermore, courts in other circuits have explicitly held that

a Facebook ID constitutes PII. See Czarnionka v. Epoch Times Ass'n, Inc., No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) ("The FID itself represents a particular individual."); Lebakken v. WebMD LLC, No. 1:22-cv-00644-TWT, 2022 WL 16716151 (N.D. Ga. Nov. 4, 2022) ("[Plaintiff] adequately alleged that [defendant] disclosed her Facebook ID and email address in connection with her video viewing information to Facebook and that the disclosure of such information constituted a disclosure of PII.").

As to which entity collects the information and is responsible for the disclosure of PII, the complaint alleges that defendant programmed the USA Today website to include a Facebook tracking pixel.  According to the complaint, the Facebook tracking pixel is an "invisible" tool that tracks users' actions on Facebook advertisers' websites and reports that information to Facebook.  Facebook then uses that information to show the user targeted ads.

In its motion to dismiss, Gannett contradicts the alleged facts, contending that Facebook, not defendant, placed the tracking pixel on the USA Today website.  Such a factual dispute cannot be resolved on a motion to dismiss at which stage the Court must treat all non-conclusory factual allegations in the complaint as true. Ocasio-Hernandez, 640 F.3d at 12.  Plaintiff

alleges throughout the complaint that defendant inserted the code into the USA Today website to transmit users' information to Facebook. Accepting the factual allegations as true and drawing reasonable inferences in the plaintiff's favor, the Court finds that it is plausible Gannett disclosed PII under the VPPA. See id. at 10-11.

### 3. "Knowing" Disclosure of PII

Finally, defendant argues that even if plaintiff did adequately allege that Gannett disclosed PII, he did not sufficiently allege that Gannett "knowingly" disclosed PII as required by the VPPA. 18 U.S.C. § 2710(b)(1). Essentially, defendant asserts that plaintiff did not allege facts that Gannett ever knew that users' information was transmitted to Facebook.

Such assertions are, however, plainly contradicted by the complaint which alleges that

> defendant chose, programmed, and intended for Facebook to receive the video content name, its URL, and, most notably, the digital subscriber's FID [and that] defendant knew that the Facebook pixel disclosed Personal Viewing Information to Facebook.

As discussed above, at the motion to dismiss stage, the Court accepts the factual allegations in the complaint as true. Ocasio-Hernandez, 640 F.3d at 10. Therefore, the Court finds

that plaintiff has plausibly pled that Gannett's disclosure of users' PII was made knowingly.

In conclusion, at this early juncture plaintiff plausibly pleads a violation of the VPPA's prohibition on disclosure of PII. See Yershov, 820 F.3d at 489-90 ("We need simply hold, and do hold, only that the transaction described in the complaint—whereby [plaintiff] used the mobile device application that Gannett provided to him, which gave Gannett . . . his device identifier, and the titles of the videos he viewed in return for access to Gannett's video content—plausibly pleads a case that the VPPA's prohibition on disclosure applies.").

**ORDER**

For the foregoing reasons, defendant's motion to dismiss (Docket No. 21) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 20, 2022